OPINION OF THE COURT
Chief Judge Wachtler.
In this dispute between a fuel oil supplier and the City of New York concerning a public contract, the supplier seeks to establish that it is entitled to charge the city for gross receipt taxes imposed on the sales, though the tax was not included in its original bid price. We conclude that, in this competitive bidding context, plaintiff was precluded from modifying its bid *16 to include the right to charge the tax as a separate line item and, not having withdrawn its original bid prior to being awarded the contract, it is bound by the terms of the original bid.
In April 1983, defendant New York City solicited bids for contracts to supply fuel oil and kerosene to the city from July 1, 1983 to June 30, 1984. The bid documents precluded bidders from withdrawing their bids before June 26, 1983, 45 days after the scheduled bid opening on May 12. After the firm offer period, if no award had been made, a bid could be withdrawn but, according to the documents, the bidder "must do so in writing; otherwise his bid remains in effect.”
In addition, the standard form of contract included in the documents permitted mutual modifications of the contract once an award was made, but they could not "materially affec[t] the substance” of the contract and could not "result in a net change in cost to the City or the Seller of the Work to be done under the Contract.” However, the documents made no provision for postsubmission bid modification. ’
The bid documents also required that, to the extent bidders subject to the New York State gross receipts tax intended to pass the tax through to the city, it was to be included in the bid amount, not billed as a separate line item. At the time plaintiff submitted its bid, it was exempt from that tax because it sold fuel primarily for residential use. Accordingly, its bid, the lowest submitted, did not reflect a charge for the gross receipts tax.
By letter dated June 21, the city indicated its intent to award the contract to plaintiff. Under the procedures set forth in the bid documents, this letter of intent did not constitute an award, which could be made only by the mailing of either a purchase order or a notice of award. Thus, between June 26, when the 45-day firm offer period expired, and July 6, when the city issued a formal notice of award, plaintiff was free to withdraw its bid.
During this period, on July 1, plaintiff delivered to the city a letter written by plaintiff’s general counsel. The effect, if any, of this letter on the parties’ contract is the focus of this appeal.
The letter was prompted by a change in the Tax Law making the gross receipts tax applicable to sales of fuel oil by plaintiff (see, Tax Law § 300 et seq., added L 1983, ch 400, § 8, eff July 1, 1983). The letter refers to the June 21 letter of *17 intent and the impending contract between the parties, describes the new legislation, and continues as follows: "This law was not in effect, and was not even proposed, at the time we submitted our bid for this contract. Accordingly, this new tax has not been included in our bid price under this contract. In view of the dramatic impact this 314% gross receipts tax will have on our business, we must advise you of our intention to charge this tax to the City of New York, as a separate line item on our invoices, in connection with purchases made pursuant to this contract.”
The notice of award issued by the city five days later referred only to plaintiff’s bid price; it made no reference to the letter from plaintiff’s counsel or to the gross receipts tax. On July 8, however, the city acknowledged the letter from plaintiff’s counsel and advised plaintiff that the letter had been referred to the Corporation Counsel for a formal opinion. Apparently, no such opinion was ever issued.
Plaintiff made deliveries of fuel under the contract in July, August and September and added the 314% gross receipts tax to the invoices as a separate line item. The city refused to pay the additional amount. Plaintiff suspended deliveries and eventually brought this action to recover the amount of the gross receipts tax from the city. The city counterclaimed to recover the difference between the bid price and the price the city had to pay other suppliers to meet its demands after plaintiff suspended deliveries.
Plaintiff contends that the July 1st letter from its counsel effectively changed the terms of its original offer to include the right to bill the city for the gross receipts tax. Citing common-law principles governing contract formation, plaintiff argues that this letter revoked the original offer and substituted in its place a new offer with the added term. This new offer, according to plaintiff, was the one accepted by the city because it was the only one outstanding at the time the city issued the notice of award.
We conclude that the letter did not have such an effect.
Plaintiff’s argument ignores fundamental distinctions between traditional negotiated contracts and public contracts formed through the competitive bidding process. The principles cited by plaintiff are based on the notion that negotiation of contract terms can continue between the parties up to the moment that an offer is accepted. Such one-on-one bargaining, however, is antithetical to the statutorily mandated competitive bidding process.
*18 The statutes requiring competitive bidding in the letting of public contracts (see, e.g., General Municipal Law, art 5-A, § 100 et seq.) "evince a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible price. In addition, the obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption.” (Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, 192-193.) To achieve these ends, the heart of this process must be public competition, not private negotiation. Competitive bidding, by its nature, does not contemplate the continuous bargaining that is the hallmark of negotiated contracts. Instead, a bidder is expected to submit its best offer and either stand by it or, after the firm offer period has expired, withdraw the bid and withdraw itself from competition.
Under these principles, it has been held that a municipality may not allow an individual bidder to modify its bid in a way that would "affect the competitive character of the bidding and give [the bidder] a substantial advantage or benefit not enjoyed by the other bidders” (Le Cesse Bros. Contr. v Town Bd., 62 AD2d 28, 32 [Simons, J.], affd on opn below 46 NY2d 960). The postbid modification that plaintiff seeks to establish here, oné that would increase the price to the city by allowing plaintiff to pass through an unforeseen cost of millions of dollars, falls squarely within this prohibition.
Thus, in the competitive bidding context in which it arose, the letter from plaintiff’s counsel cannot be viewed as a new offer that extinguished and replaced plaintiff’s original bid. No such option was open to plaintiff. Nor does the letter indicate that plaintiff wanted to withdraw its bid from consideration. On the contrary, the premise of the letter is that plaintiff would receive the award. At best, the letter was an attempt by plaintiff to construe the proposed contract as allowing it to bill the city for the gross receipts tax despite language to the contrary in the bid documents. Other fuel suppliers similarly caught off guard by the change in the Tax Law took the same position, which has since been rejected by the courts (see, Manhattan & Queens Fuel Corp. v Village of Rockville Centre, 72 NY2d 824; Burnside Coal & Oil Co. v City of New York, 135 AD2d 413, lv dismissed 71 NY2d 890).
We conclude, therefore, that plaintiff neither withdrew nor modified its bid prior to the notice of award and was not entitled to bill the city for the gross receipts tax. Accordingly, *19 the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, etc.