[665 NYS2d 701]

In the Matter of TRANSACTIVE CORPORATION, Respondent, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Appellants. (Proceeding No. 1.)

In the Matter of CHECK CASHERS ASSOCIATION OF NEW YORK, INC., et al., Respondents, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Appellants. (Proceeding No. 2.) (And Another Related Action.)

Third Department, November 26, 1997

50

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Michael S. Buskus* of counsel), for New York State Department of Social Services and another, appellants.

*Crane, Kelley, Greene & Parente,* Albany *(David M. Cherubin* of counsel), for Citicorp Services, Inc., appellant.

*McNamee, Lochner, Titus & Williams, P. C.,* Albany *(Leonard A. Weiss* of counsel), for Transactive Corporation, respondent.

*Bond, Schoeneck & King,* Albany *(Gerald Goldman [Winne, Banta, Rizzi, Hetherington & Basralian],* New York City, of counsel), for Check Cashers Association of New York, Inc. and others, respondents.

OPINION OF THE COURT

WHITE, J.

In June 1995, the Northeast Coalition of States[1] (hereinafter NCS) issued a request for proposals (hereinafter RFP) to acquire a regional electronic benefit transfer system whereby social services recipients electronically access their governmental benefits using plastic access card technology in automated teller machines and point-of-sale terminals. Over 20 entities,

---

1. The coalition States are New York, Connecticut, Maine, New Hampshire, Vermont, Massachusetts and Rhode Island.

including petitioner Check Cashers Association of New York, Inc. (hereinafter Check Cashers) and respondent Citicorp Services, Inc. (hereinafter Citicorp), notified respondent State Department of Social Services (hereinafter DSS) of their intention to submit a bid; however, only five[2] did so by the September 14, 1995 deadline. Thereafter, NCS issued a series of letters clarifying certain matters and inviting the five bidders to submit their best and final offers which it then evaluated, concluding that Citicorp's proposal was superior to the others. Subsequently, on April 15, 1996, DSS and Citicorp entered into a contract that was approved by the State Comptroller on September 13, 1996.

Prior to the Comptroller's approval, Check Cashers and petitioner Transactive Corporation (hereinafter Transactive) commenced these CPLR article 78 proceedings[3] seeking, *inter alia*, a judgment annulling the contract on the ground that DSS had failed to comply with the Procurement Stewardship Act of 1995 (*see,* State Finance Law § 160 *et seq.*). In response to motions for accelerated judgment, Supreme Court granted the petitions. These appeals ensued.

The first issue presented is whether Check Cashers and Transactive have standing inasmuch as neither submitted a bid. The RFP welcomed proposals from teams with a clear distinction of responsibilities so long as one member was a financial institution and the other members were fully qualified to perform their expected functions under the contract. The RFP indicated, however, that only one member of the team could be designated as the primary contractor. Transactive clearly falls within these parameters as it is the primary subcontractor for Fleet Financial Group (hereinafter Fleet) and is also the Nation's largest processor of systems for the electronic distribution of benefits. Accordingly, as a member of Fleet's team, Transactive can be viewed as an unsuccessful bidder, which status provides it with standing (*see, Matter of Amdahl Corp. v New York State Higher Educ. Servs. Corp.*, 203 AD2d 792, 794).

Although Check Cashers filed an intention to submit a bid, it did not, as required, certify that it could meet or exceed the qualifications for a bidder established by the RFP; nor has

2. The bidders were Citicorp, Chemical Banking Corporation, First Security Processing Services, Fleet Financial Group, Inc. and Electronic Data Systems.

3. A declaratory judgment action commenced by Check Cashers was converted by Supreme Court into a CPLR article 78 proceeding.

52

it made an evidentiary showing that it could have qualified. Therefore, since it could not bid we conclude that it lacked standing because its interest does not fall within the zone of interest protected by the State Finance Law (*see, Matter of Axelrod v Sobol*, 78 NY2d 112, 115; *Matter of Corbett v New York State Thruway Auth.*, 204 AD2d 542, 542-543, *lv dismissed* 84 NY2d 881). We further find that it could not meet the criteria for association standing (*see, Matter of Dental Socy. v Carey*, 61 NY2d 330, 333-334). Consequently, Supreme Court should have dismissed the two proceedings commenced by Check Cashers.

Our discussion now turns to Transactive's proceeding. The central purposes of New York's competitive bidding statutes are "(1) protection of the public fisc by obtaining the best work at the lowest possible price; and (2) prevention of favoritism, improvidence, fraud and corruption in the awarding of public contracts" (*Matter of New York State Ch., Inc., Associated Gen. Contrs. v New York State Thruway Auth.*, 88 NY2d 56, 68). Inasmuch as the intended beneficiaries of these statutes are the taxpayers, we must weigh Transactive's challenge with sole reference to the public interest (*see, Matter of Construction Contrs. Assn. v Board of Trustees*, 192 AD2d 265, 267).

Before examining the points of contention, it is necessary to generally outline the bidding process set forth in the RFP. Bidders were required to submit their responses in two parts: technical and pricing. Provided that the proposal passed the prescreening process, it was evaluated by two committees, the technical evaluation committee (hereinafter TEC) and the financial evaluation committee, with the ultimate selection of the contractor made by the selection committee. At the conclusion of the evaluation process, Fleet was ranked first in technical rankings and Citicorp ranked fourth, while in the costs rankings Citicorp's bid was the lowest after the withdrawal of another bidder. Fleet's bid was 18% higher than Citicorp's bid and, although technically superior, was not considered by DSS as it was outside the 10% competitive price range established by NCS.

The first point of contention is that the RFP did not comply with State Finance Law § 163 (9) (b), which provides that a solicitation must describe and disclose the general manner in which the evaluation shall be conducted and, where appropriate, identify the relative importance and/or weight of cost and the over-all technical criteria. Here, the RFP advised bidders that their technical proposals would be evaluated in accordance with five weighted criteria and that, if the cost

proposals varied significantly so that they were not in a competitive range, price would be the basis for selection.

Transactive maintains that these disclosures were inadequate since the TEC utilized 109 scoring items that were not listed in the RFP in evaluating the technical proposals. This argument overlooks the fact that State Finance Law § 163 (9) (b) does not require particularization, but only generalization. In our view this standard was met here since the RFP set forth the general evaluation criteria and the weight accorded to each (*compare, Matter of Amdahl Corp. v New York State Higher Educ. Servs. Corp.*, *supra*, at 794). Moreover, the 109 items were simply more specific factors subsumed within the five general criteria and were a reworking and reformatting of the specification matrix that was included in the RFP distributed to the bidders. Significantly, the record shows that the technical proposals were scored in the manner specified in the RFP. With respect to price, we find that the RFP adequately advised the bidders as to the weight to be accorded that factor.

█ The next argument centers on State Finance Law § 163 (7), which requires a State agency to document, in the procurement record and in advance of the receipt of offers, the determination of the evaluation criteria. It is undisputed that NCS did not specify that the competitive range would be 10% until after the bidders' first proposals were received but prior to the receipt of their final proposals. The Comptroller found that this procedure did not violate the letter or spirit of State Finance Law § 163 (7) since the establishment of the competitive range was in the public interest and there was no evidence of favoritism, fraud or corruption nor any unfair advantage to the low bidder at the other bidders' expense. We are in accord with these findings (*see, Matter of Decker v Gooley*, 212 AD2d 893, 896).

In awarding a contract for services, a State agency generally cannot rely solely on price as the determinative factor but must engage in a cost-benefit analysis since State Finance Law § 163 (10) provides that such a contract must be awarded on the basis of best value, a method that optimizes quality, cost and efficiency among responsive and responsible bidders (*see*, State Finance Law § 163 [1] [j]). Given the fact that DSS subjected the proposals to technical and financial evaluations, we find that it engaged in the requisite cost-benefit analysis. Further, DSS' reliance on a competitive range was permissible because such procedure embodies a cost-benefit analysis as it reflects a determination that where a price proposed by a

responsive and responsible bidder is lower than a price offered by another bidder by a stated percentage, any increase in value embodied in the higher price will be offset by the cost savings of the lower priced proposal.

We reject Transactive's ancillary argument that DSS could not utilize the competitive range procedure unless it found that its proposal and Citicorp's were substantially equivalent. Our interpretation of State Finance Law § 163 (10) (a) is that it does not establish a prerequisite for determining awards but instead provides a basis for an award when an agency makes a best-value determination and finds two or more proposals substantially equivalent.

Following Citicorp's selection, DSS notified it that the award was contingent upon the satisfactory resolution of certain issues that were identified in the evaluation process. Transactive maintains that this procedure constituted an improper contingent award. Postbid negotiations with a low bidder are allowed provided the negotiations do not involve any departure from the original specifications or any concessions to the low bidder (see, Sinram-Marnis Oil Co. v City of New York, 139 AD2d 360, 366, affd 74 NY2d 13; Matter of Fischbach & Moore v New York City Tr. Auth., 79 AD2d 14, 22, lv denied 53 NY2d 604). There is no evidence that the postbid negotiations violated these precepts.

In conclusion, we are satisfied that no favoritism, fraud or corruption is presented here and that there is no material or substantial irregularity in the bidding process which undermined the fairness of the competition (see, Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, 148). Accordingly, as we find DSS' award of the contract to Citicorp to be in the public interest and predicated upon a rational basis, we reverse Supreme Court's judgment in favor of Transactive.

CREW III, J. P., CASEY, PETERS and SPAIN, JJ., concur.

Ordered that the judgment and corrected judgment are reversed, on the law, without costs, determination confirmed and petitions dismissed.