[677 NYS2d 359]

SEVILLE CONSTRUCTION, INC., Respondent-Appellant, v NEW YORK CITY HOUSING AUTHORITY, Appellant-Respondent.

First Department, September 10, 1998

APPEARANCES OF COUNSEL

*Ronald E. Sternberg* of counsel, (*Leonard Koerner* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellant-respondent.

*Chris Georgoulis* of counsel (*Scotto, Georgoulis, Dockery & Scotto,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

MILONAS, J. P.

Plaintiff construction company was the successful bidder to rehabilitate seven buildings owned by defendant New York City Housing Authority (NYCHA). The issue on appeal is whether NYCHA breached the contract by hiring another firm to perform asbestos removal after Seville commenced its work at the site.

Seville's $6.2 million bid for the project included $57,000 for a limited amount of asbestos removal in the building basements, to be performed by using a relatively low-cost method, the "glove and bag" technique. Based on inspections almost two years earlier as well as City documents, the contract specifications described the asbestos problem as "intact asbestos containing insulation around pipes, existing tank lagging, and friable insulation from breeching areas in the basements." However, because the project entailed the complete gutting and rehabilitation of buildings in severely deteriorated condition, the "Information for Bidders" required all potential bidders to follow certain procedures including "Pre-Bidding Examination and Investigation of Site. Bidders must carefully

examine the site(s) of the proposed work, as well as the adjacent area and seek usual sources of information for they will be conclusively presumed to have full knowledge of any and all conditions on, about or above the site relating to or affecting in any way the performance of the work to be done under this Contract which were or should have been indicated to a reasonably prudent bidder." The bid documents included plaintiff's representation that it had complied with this provision and had "visited and examined the site of the work and has carefully examined the Contract." In fact, although the buildings were open to bidders for inspection on a particular day, Seville concedes that, despite its express representation to the contrary, it did not inspect them at that time or any other time; it claims that when it tried to inspect them at a later date, it could not get into the buildings.

Almost immediately after work commenced, Seville's asbestos removal subcontractor notified Seville that, upon inspecting one of the buildings for the first time, the asbestos contamination was of a more complicated nature and more widespread than had been anticipated, requiring additional work that had not been figured into the subcontractor's price for the job. The subcontractor's letter reveals that it, too, had never inspected the premises but had prepared its estimate to plaintiff based on what was "spelled out in the Specification."

Upon learning of the discovery, NYCHA directed Seville to stop work while an independent consultant (ASTEM) looked into the extent of asbestos contamination in all the buildings. ASTEM reported that the asbestos in the basements was no longer intact and had contaminated debris on the floor; also, there was asbestos elsewhere in the buildings. The nature of the contamination required removal by the "isolation and bulk" method, a more complicated and costly procedure than the glove and bag technique.

NYCHA decided to delete the asbestos removal work from Seville's contract and contracted with Advanced Asbestos Removal Corp. (Advanced) to perform the work on an emergency basis. When Advanced completed the asbestos removal, Seville returned to work. There was a second delay when Seville discovered further asbestos problems, and, after Advanced performed this asbestos removal, Seville refused to return to the job, claiming that NYCHA had breached the terms of the contract.

Plaintiff's first cause of action asserted that NYCHA had breached the contract by retaining another firm to perform

work during the term of plaintiff's contract; the second cause of action alleged that NYCHA had failed to make a payment on the contract (Requisition No. 1) and sought payment and damages; and the third cause of action sought $1 million for NYCHA's intentional and knowing breach of the contract in bad faith. NYCHA moved for summary judgment dismissing the complaint, and plaintiff cross-moved for summary judgment on the first cause of action.

The court granted defendant's motion to dismiss the second and third causes of action, finding that as to payment on Seville's Requisition No. 1 in the amount of $132,156.12, NYCHA had eventually tendered and plaintiff had accepted payment in the amount of $116,511.37; that Seville had not thereafter claimed a shortfall; and that it had not alleged what damages had been incurred by the delay in payment. Since Seville was not entitled to interest on the payment, pursuant to General Municipal Law § 106-b (1) (b), and there was no provision in the contract for losses resulting from late payments, the court properly dismissed this second cause of action. The court also properly dismissed the third cause of action on the ground that punitive damages are not recoverable against the municipality.

In denying summary judgment to defendant as to the first cause of action for breach of contract, the court found there was an issue of fact concerning whether NYCHA's survey had accurately disclosed the extent of asbestos contamination and whether NYCHA had actual knowledge of or was negligent in failing to determine the existence of a more serious condition than was disclosed in the bidding documents. We disagree and find that defendant was entitled to summary judgment dismissing the first cause of action as well.

The relevant provisions of the contract are the following. First, article 30 provides that NYCHA has the power "(2) to modify or change this contract so as to require * * * (b) the omission of contract work whenever it deems such omission in the interest of THE HOUSING AUTHORITY to do so, provided, however, such omitted work shall not be performed by another contractor during the term of this contract." It is this provision that plaintiff claims was breached when Advanced performed the asbestos removal in the buildings, including the basement areas.

Article 12, however, provides that "[d]uring the progress of the work, other contractors may be engaged in performing other work or may be awarded other Contracts for additional

work on this Project;" in such event, the contractors must coordinate their work. Under section IX, plaintiff assumed the risk of "any unforeseen obstruction" or "difficulties which may be encountered" in the work. Article 25 also grants NYCHA the authority to modify or change the contract, but expressly limits the cost entailed in such modification or "extra work": "This Contract may be modified or changed by the Housing Authority from time to time, in a manner not materially affecting the substance thereof or increasing the price to be paid by more than ten (10%) percent of the contact price in order to carry out and complete more fully and perfectly the Work herein agreed to be done and performed."

Defendant maintains that it has not breached the contract because the extensive work performed by Advanced was not the work omitted from plaintiff's contract, and that, in any event, plaintiff's estimate under the "extra work" provision exceeded the 10 per cent limit expressly imposed by the contract. In this respect, we note that while plaintiff cites its $564,000 estimate for basement asbestos removal, defendant cites plaintiff's $1.5 million estimate for removal of all asbestos detected by ASTEM.

On the record before us, we find that NYCHA was entitled to modify the contract to omit the limited asbestos removal in the basement areas from plaintiff's contract and to engage another firm to perform the different and far more extensive job of asbestos removal throughout the buildings, which required a far more complicated process than that specified in plaintiff's contract. Thus, it did not breach the contract by giving the "omitted work" to another contractor during the term of plaintiff's contract. Contrary to plaintiff's assertion, more than a mere change in method was involved; the entire nature and scope of the underlying condition and work to be performed had materially changed. Nor was NYCHA obligated under the contract to have plaintiff perform the proposed asbestos removal as "extra work."

Plaintiff should not be permitted to benefit from its failure to conduct a prebid inspection as well as its affirmative misrepresentation (in both its bid and the contract) that it had conducted an inspection by insisting that NYCHA was obligated to negotiate with it to perform the "extra work" ultimately entailed in removing the asbestos. We have previously held that a successful bidder who failed to "carefully examine the project work site" and thereafter seeks to modify its bid to obtain more favorable terms upon ostensibly newly

discovered facts "is, in effect, improperly attempting to secure an unfair competitive advantage over other legitimate bidders and to conduct the type of post-bid negotiation deemed violative of the practice of competitive bidding by the courts of this State (*Sinram-Marnis Oil Co. v City of New York*, 74 NY2d 13, *affg* 139 AD2d 360, 365-366)" (*Lake Constr. & Dev. Corp. v City of New York*, 211 AD2d 514, 515). In *Lake*, the contractor was denied *recovery* for the "extra work" actually performed; here, for the same failure to inspect the proposed work site, plaintiff may not claim entitlement to perform "extra work" in the first place.

Moreover, the fact that plaintiff failed to do what it was expressly required to do cannot otherwise inure to its benefit; defendant's specifications regarding the asbestos present in the buildings cannot be viewed as somehow excusing plaintiff's low bid or justifying its claim of entitlement to "extra work." Had plaintiff inspected the premises as required, it would have discovered—as its subcontractor immediately did upon its "inspection of the work area"—that additional work was involved in removing the asbestos. Contrary to the IAS Court's conclusion that there was a question of fact as to NYCHA's knowledge or disclosure in this regard, there is no suggestion of fraud or misrepresentation on the part of NYCHA with respect to the asbestos specifications in the contract that would entitle plaintiff to a modification for extra work or excuse its failure to perform the required inspection (*see, Savin Bros. v State of New York*, 62 AD2d 511, 515, *affd on opinion below* 47 NY2d 934; *see also, Lake Constr. & Dev. Corp. v City of New York, supra*). The record reveals that the specifications were based on inspections conducted almost two years earlier, and the fact that the buildings had remained unoccupied and unsecured in the interim easily accounts for further deterioration. We note that, upon learning of Seville's subcontractor's discovery, NYCHA immediately investigated, contracted and paid for the removal that was deemed necessary.

Accordingly, the order of Supreme Court, New York County (Marylin Diamond, J.), entered February 13, 1997, which granted defendant's motion for summary judgment dismissing the complaint to the extent of dismissing the second and third causes of action and denied plaintiff's cross motion for summary judgment on the first cause of action, should be modified, on the law, to the extent of granting that branch of defendant's motion for summary judgment dismissing the first cause of action, and otherwise affirmed, without costs. The Clerk is

directed to enter judgment in favor of defendant dismissing the complaint.

WALLACH, TOM, MAZZARELLI and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered February 13, 1997, modified, on the law, to the extent of granting that branch of defendant's motion for summary judgment dismissing the first cause of action, and otherwise affirmed, without costs.