Matter of Kapsch TrafficCom USA, Inc. v Dominguez (2025 NY Slip Op 07260)

Matter of Kapsch TrafficCom USA, Inc. v Dominguez

2025 NY Slip Op 07260

Decided on December 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 24, 2025

CV-24-1625
[*1]In the Matter of Kapsch Trafficcom USA, Inc., Appellant,
vMarie Therese Dominguez, as Commissioner of Transportation, et al., Respondents.

Calendar Date:November 13, 2025

Before:Clark, J.P., Reynolds Fitzgerald, Lynch, Ceresia and Powers, JJ.

Hinckley, Allen & Snyder LLP, Albany (James J. Barriere of counsel), for appellant.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Marie Therese Dominguez and another, respondents.
L'Abbate, Balkan, Colavita & Contini, LLP, Melville (Ryan J. Johnson of counsel), for WSP USA Services, Inc., respondent.
Manning Gross + Massenburg LLP, New York City (Joshua S. Stern of counsel), for Gannett Fleming Management Services, LLC, respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Meagan Galligan, J.), entered September 19, 2024 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review determinations of respondent Department of Transportation rejecting petitioner's bids for certain contracts.
Petitioner is a company that develops and implements technology for traffic management. In 2016, petitioner acquired a company, Schneider Electric, and its employees. Three employees of that company — Charles Maloney, Sean Morgan and Algernon Hannah — were cofounders and affiliated with a company called United DOTS, a company that also provides transportation management services. Upon learning of the three employees' affiliation with United DOTS, petitioner informed the employees that they either had to resign from petitioner's company or United DOTS, but that they could not continue to be affiliated with both companies. Maloney and Morgan resigned from United DOTS, and Hannah resigned from petitioner. In 2019, respondent Department of Transportation (hereinafter DOT) awarded petitioner a contract to perform traffic management services (hereinafter the 2019 contract) and, in February 2020, petitioner subcontracted a portion of the 2019 contract to United DOTS.
In 2022, DOT solicited bids for the operation of two transportation management centers under two separate contracts. Petitioner submitted proposals for each project. In 2023, DOT wrote to advise petitioner that it provided "the tentative best value ranked proposal," but that DOT had reservations as to whether petitioner was a "responsible" consultant.[FN1] DOT attributed these reservations to what it alleged to be multiple violations under the 2019 contract, including petitioner's failure to disclose a relationship between it and United DOTS. To this end, DOT advised petitioner that its contract review unit (hereinafter CRU) would be conducting a review to determine if petitioner qualified as a responsible consultant and was thus eligible for award of the contract. Petitioner responded in writing to DOT's concerns, and, among other things, denied any relationship between petitioner and United DOTS. After receiving the correspondence, DOT informed petitioner that its concerns were unabated, and to that end it scheduled a phone conference to discuss its concerns. Said conference, between members of the CRU and representatives of petitioner, took place on July 12, 2023.
After the phone conference, petitioner submitted, and DOT accepted, additional information and explanations addressed to specific DOT concerns. After this exchange of information, DOT determined that petitioner was not responsible and the contracts were awarded to respondents WSP USA Services, Inc. and Gannett Fleming Management Services, LLC. Petitioner appealed the rejection of its bid to the Office of the State Comptroller arguing that DOT's determination was arbitrary and capricious and that DOT failed to provide petitioner [*2]with due process. The Office of the State Comptroller found no reason to disturb DOT's determination and found that petitioner was provided with the requisite due process. Petitioner commenced this CPLR article 78 proceeding challenging DOT's determination. Supreme Court dismissed the petition, and petitioner appeals.
DOT, as part of its statutory procurement practices, is to award service contracts to the lowest bidder "on the basis of best value to a . . . responsible offerer" (State Finance Law § 163 [4] [d] [emphasis added]; see Matter of AAA Carting & Rubbish Removal, Inc. v Town of Southeast, 17 NY3d 136, 142 [2011]). The statute defines "[r]esponsible" as "the financial ability, legal capacity, integrity and past performance of a business entity" (State Finance Law § 163 [1] [c]). "To that end, prior to awarding a contract, the relevant State agency must make a determination of responsibility of the proposed [consultant]" (Matter of Adelaide Envtl. Health Assoc. v New York State Off. of Gen. Servs., 248 AD2d 861, 862 [3d Dept 1998] [internal quotation marks and citation omitted]). "Judicial review of an agency's decision denying or awarding a contract is limited to ascertaining whether there is a rational basis to support the agency's determination" (Matter of Framan Mech., Inc. v State Univ. Constr. Fund, 151 AD3d 1429, 1430-1431 [3d Dept 2017] [internal quotation marks and citation omitted]; see Matter of Global Tel*Link v State of N.Y. Dept. of Correctional Servs., 70 AD3d 1157, 1158 [3d Dept 2010]). As long as the agency's determination has a rational basis, a reviewing court may not substitute its judgment for that of the agency, even if it would have reached a different conclusion (see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of Ventresca-Cohen v DiFiore, 225 AD3d 9, 11 [3d Dept 2024]). "[P]etitioner, as the rejected bidder, bore the burden of demonstrating that [DOT's] determination to reject its bid was irrational" (Matter of Framan Mech., Inc. v State Univ. Constr. Fund, 151 AD3d at 1431 [internal quotation marks, brackets, ellipsis and citation omitted]; see Matter of E.W. Tompkins Co., Inc. v State Univ. of N.Y., 61 AD3d 1248, 1250 [3d Dept 2009], lv denied 13 NY3d 701 [2009]).
DOT informed petitioner that it had found it to be nonresponsible, and thus ineligible for the contract, by way of a September 2023 CRU determination. Section 3 of this document, denominated "CRU Determination," specifically stated that after consideration of the written documentation provided by petitioner, as well as statements made and information presented by petitioner during the July phone conference, DOT's concerns about the responsibility of petitioner persisted. It listed those concerns, the majority of which focused on evidence indicating that petitioner had an ongoing, undisclosed relationship with United DOTS. This included petitioner's failure to comply with Articles 34 and 36 of the 2019 contract;[FN2] that as recently as of [*3]the date of the CRU investigation relevant here, Maloney was listed as the registered agent for United DOTS; the use of a building owned by Morgan's aunt as a business address for United DOTS; the fact that both Maloney and Morgan were placed in supervisory positions over United DOTS — a company that they had cofounded; the submission of estimates by United DOTS to Morgan's personal Gmail account; the award of the subcontract to United DOTS despite the apparent lack of an estimate submitted to petitioner by United DOTS; and estimates from two separate companies appearing to have been generated from the same template and having the same typographical errors, making them, in the words of a CRU investigator, "not true estimates."
Petitioner steadfastly argues that there is no conflict of interest as all ties between its employees and United DOTS were severed in 2016, when Maloney and Morgan resigned from United DOTS and Hannah resigned from petitioner. The crux of petitioner's argument, however, is that both DOT and Supreme Court misinterpreted the facts surrounding the painting estimates, concluding that the estimates were "fake" and as a result incorrectly determined that petitioner's subcontract award of the 2019 contract to United DOTS was a result of bid rigging, when in fact the bids were solicited by United DOTS in furtherance of its sub-subcontracting painting services attendant to the subcontract.
We find that Supreme Court properly determined that DOT had a rational basis to reject petitioner's bid. Contrary to petitioner's contention that DOT's determination was based solely on suspicion and that DOT failed to consider the explanations set forth in its written correspondence dated July 22, 2023, DOT specifically referenced and considered petitioner's July 22, 2023 letter of explanation. Moreover, DOT rendered its determination based upon the facts deduced and inferences drawn from the evidence presented at the phone conference and the subsequent written submissions received from petitioner. Even if we were to agree that DOT reached an erroneous conclusion regarding the receipt of the painting sub-subcontracting estimates, this finding alone would not, contrary to petitioner's assertion, invalidate DOT's finding, as it invoked numerous other reasons for its determination (see Matter of White Plains Fine Wine & Spirits LLC v New York State Liq. Auth., 184 AD3d 1068, 1071 [3d Dept 2020], lv denied 35 NY3d 919 [2020]). Although petitioner denies having a conflict of interest with United DOTS and asserts that its violations of the 2019 contract were de minimis, petitioner did not fully satisfy all of DOT's conflict of interest concerns and these issues, coupled with the 2019 contract violations, provide a rational basis for DOT's determination of nonresponsibility and its decision not to award petitioner the two contracts (see Matter of Framan Mech., Inc. v State Univ. Constr. Fund, 151 AD3d at 1432; Matter of Adelaide Envtl. Health Assoc. v [*4]New York State Off. of Gen. Servs., 248 AD2d at 863; Matter of R.W. Granger & Sons v State of N.Y. Facilities Dev. Corp., 207 AD2d 596, 598 [3d Dept 1994]).
Petitioner next contends that DOT's determination was made without affording it adequate procedural due process. We agree that because the stigma attached to branding petitioner as not responsible affects petitioner's ability to carry on its business, a liberty interest is implicated that entitles petitioner to procedural due process (see Matter of Sunsea Energy LLC v New York State Pub. Serv. Commn., 229 AD3d 1021, 1023-1024 [3d Dept 2024], lv denied 43 NY3d 901 [2025]; Matter of Schiavone Constr. Co. v Larocca, 117 AD2d 440, 443 [3d Dept 1986], lvs denied 68 NY2d 610 [1986], 68 NY2d 610 [1986]). Here, the record demonstrates that, initially, petitioner was given written notice of DOT's concerns as to whether petitioner qualified as a responsible consultant and was given an opportunity to provide a written response and other relevant material. Additionally, petitioner was given notice of a phone conference with DOT's CRU. Petitioner availed itself of both of these opportunities. Subsequent to the CRU phone conference, petitioner sought to produce additional information, to which DOT acquiesced. AfterDOT's determination, petitioner had the ability to seek review from the Office of the State Comptroller and through this CPLR article 78 proceeding. We find that these procedures were adequate and afforded petitioner the process that it was due (see Matter of Sunsea Energy LLC v New York State Pub. Serv. Commn., 229 AD3d at 1024-1025; Matter of Framan Mech., Inc. v State Univ. Constr. Fund, 151 AD3d at 1433; Matter of Schiavone Constr. Co. v Larocca, 117 AD2d 444).
Finally, petitioner contends that the penalty it received as a result of DOT's determination — branding it as nonresponsible and awarding the contracts to other bidders — is disproportionate to petitioner's conduct. We disagree. "Judicial review of an administrative penalty is limited to whether, in light of all the relevant circumstances, the penalty is so disproportionate to the charged offenses as to shock one's sense of fairness" (Matter of Gulotta v New York State Thruway Auth., 174 AD3d 1205, 1206 [3d Dept 2019] [internal quotation marks and citations omitted]; accord Matter of Brooks v New York State Dept. of Corr. & Community Supervision, 218 AD3d 1096, 1103 [3d Dept 2023]). "In assessing the penalty, the reviewing court may neither second-guess the administrative agency nor substitute its own judgment for the action taken" (Matter of Liguori v Beloten, 76 AD3d 1156, 1157-1158 [3d Dept 2010] [citation omitted], lv denied 16 NY3d 702 [2011]; see Matter of Rodriguez v American Bridge Co., 213 AD3d 1118, 1121 [3d Dept 2023]). The purposes of New York's competitive bidding statutes, including State Finance Law § 163, are the "protection of the public fisc by obtaining the best work at the lowest possible price . . . and . . . [the[*5]] prevention of favoritism, improvidence, fraud and corruption in the awarding of public contracts" (Matter of Transactive Corp. v New York State Dept. of Social Servs., 236 AD2d 48, 52 [3d Dept 1997] [internal quotation marks and citation omitted], affd 92 NY2d 579 [1998]; see Lancaster Dev., Inc. v McDonald, 112 AD3d 1260, 1262 [3d Dept 2013], lv denied 22 NY3d 866 [2014]). Therefore, petitioner's ability to be awarded the contracts is tempered by DOT's statutory duty to protect the public fisc and to prevent favoritism or the appearance of favoritism, which undermines the fairness of the competitive bidding process and contravenes the public interest in a prudent and economical use of public moneys. Additionally, it deters future violations of the bidding statutes and contracts (see Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, 148 [1985]). Accordingly, DOT's penalty is not so disproportionate as to shock one's sense of fairness (see Matter of Gulotta v New York State Thruway Auth., 174 AD3d at 1206; cf. Albert Elia Bldg. Co. v New York State Urban Dev. Corp., 54 AD2d 337, 345 [4th Dept 1976]).
Clark, J.P., Ceresia and Powers, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent. There is no dispute that petitioner provided the tentative best value ranked proposal with respect to two transportation management center projects. The Department of Transportation's (hereinafter DOT) determination that petitioner was not a responsible entity and thus ineligible for a contract award on these projects necessarily impugned petitioner's reputation and integrity (see Matter of AAA Carting & Rubbish Removal, Inc. v Town of Southeast,17 NY3d 136, 143 [2011]; Matter of LaCorte Elec. Constr. & Maintenance v County of Rensselaer, 80 NY2d 232, 236 [1992]; see also State Finance Law § 163 [1] [c], [j]; [9] [f]). The majority has correctly observed that "[t]he crux of petitioner's argument" is focused on a misunderstanding with respect to two painting estimates, leading to the erroneous conclusion that petitioner awarded a subcontract to United DOTS as a result of bid rigging. As petitioner acknowledges in its brief, if that conclusion were true, a finding of nonresponsibility would be warranted. The record, however, shows that both DOT and Supreme Court mistakenly assumed that the two painting estimates were part of the subcontract bid process. As petitioner explained in its post-contract review unit (hereinafter CRU) meeting submissions, the painting estimates were actually solicited by United DOTS with respect to "obtaining quotes from lower tier subcontractors to perform the maintenance tasks." As for DOT's further concern that the painting estimates utilized the same form, petitioner explained that United DOTS utilized its own template to procure quotes.
The operative point is that the painting estimates were not part of the bid process by which petitioner awarded the subcontract to United DOTS. And yet, the CRU determination [*6]explained that DOT was concerned about petitioner's lack of effective internal controls based, in part, on "the award of a subcontract for painting to United DOT[S] when there does not appear to have been an estimate for painting submitted to [petitioner] by United DOT[S]." Throughout its decision, Supreme Court repeatedly referred to the painting estimates as pertaining to petitioner's award of the subcontract to United DOTS. In effect, both DOT and Supreme Court based their decisions on a significant factual error (i.e., that the award of the subcontract to United DOTS was based on a fraudulent procurement process, as evidenced by the painting estimates).
From my perspective, the significance of this factual error cannot be overstated for, if true, it certainly would have heightened DOT's concerns as to the additional factors identified with respect to petitioner's employees, Charles Maloney and Sean Morgan, and whether a conflict of interest existed with respect to petitioner and United DOTS. This record demonstrates that both Maloney and Morgan resigned from United DOTS in 2016, while Algernon Hannah resigned from petitioner at that time — actions taken to address any potential conflict of interest between these two entities. There are, however, other discrepancies upon which the CRU based its determination, including the fact that Maloney was still listed as the registered agent for United DOTS and that United DOTS maintained an office at a property owned by Morgan's aunt. Additionally, Morgan's personal email was included on the two painting estimates submitted to United DOTS. For their part, both Maloney and Hannah maintained that the failure to remove Maloney as the registered agent after his resignation in 2016 was an oversight brought to light by DOT's inquiry and would be corrected. Petitioner further explained that it does not maintain information with respect to property owned by an employee's family member and there is nothing in this record to suggest that the lease between United DOTS and Morgan's aunt was other than an arm's-length transaction.
In view of the foregoing, I do not agree with the majority's approach to set aside the bid-rigging error and validate DOT's determination based on the other factors of concern identified by DOT. "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [citation omitted]; accord Matter of Ward v City of Long Beach, 20 NY3d 1042, 1043 [2013]). Whether or not the other factors, standing alone, warrant a nonresponsibility finding should be determined by DOT in the first instance based on the correct facts. Under these circumstances, the nonresponsibility determination should be annulled and the matter remitted to Supreme Court with directions to remand to DOT for reconsideration (see Matter of P.G.P. Entertainment Corp. v State Liq. Auth., 52 NY2d 886, 887-888 [1981]; compare Matter of [*7]White Plains Fine Wine & Spirits LLC v New York State Liq. Auth., 184 AD3d 1068, 1070-1071 [3d Dept 2020], lv denied 35 NY3d 919 [2020]).
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: " 'Responsible' or 'responsibility' means the financial ability, legal capacity, integrity, and past performance of a business entity and as such terms have been interpreted relative to public procurements" (State Finance Law § 163 [1] [c]).

Footnote 2: Article 34 required the submission by petitioner of the Vendor Assurance of No Conflict of Interest or Detrimental Effect form. This form certifies that the entity offering to provide services outlined in the proposal/contract does not and will not create a conflict of interest with nor position itself to breach any other contract currently in force with the State. Article 36 required United DOTS to submit the Vendor Responsibility Questionnaire. This form is required to be submitted if at any time a subcontractor's total compensation is or is expected to exceed $100,000. The form assists the State in making responsibility determinations regarding the award or approval of a contract or subcontract. The form consists of 10 sections requiring the submission of information including, but not limited to, legal business entity information, certification/licenses, legal proceedings and financial and organizational capacity.