*870 OPINION OF THE COURT
Harold J. Hughes, J.
The issue presented for determination is whether the Office of General Services can permit one of the contractors receiving a multiple-award contract to voluntarily reduce the price of the commodity it is making available to the State after the bids are opened. During 1995, the procurement provisions of the State Finance Law were changed so as to allow the use of multiple-award contracts whereby an award could be made to a number of contractors without any particular purchase order being issued (L 1995, ch 83, § 33). Subdivision (10) of section 163 of the State Finance Law provides, in pertinent part, as follows:
"10. Letting of contracts. Contracts for commodities shall be awarded on the basis of lowest price to a responsive and responsible offerer. Contracts for services shall be awarded on the basis of best value from a responsive and responsible offerer. Multiple awards for services and commodities shall be conducted in accordance with paragraph c of this subdivision * * *
"c. The commissioner or state agency may elect to award a contract to one or more responsive and responsible offerers provided, however, that the basis for the selection among multiple contracts at the time of purchase shall be the most practical and economical alternative and shall be in the best interests of the state.”
On September 26, 1995, the Office of General Services issued a group specification and invitation for bids for bituminous concrete to meet road repair requirements of State agencies and other municipal corporations for the period of January 1, 1996 to December 31, 1996. The specification called for a multiple-awards contract as authorized by State Finance Law § 163 (10). The contract is not awarded to a single low bidder, but rather is let to multiple contractors with the State or other eligible municipal corporation able to contract for a specific project with any contractor on the awards list after considering such factors as availability of the product at the specific time needed, delivery costs, proximity of the plant to the project site, and basic cost of the material. Over 70 bids were submitted and opened on November 13, 1995. The contract was awarded on March 8, 1996 to a total of 64 contractors, including Pallette and Peckham. Paragraph (54) of the general specifications provides: "54. If substantially the same or a smaller *871 quantity of a commodity is sold by the contractor under the same or similar terms and conditions as that of any State contract for such commodity then held by the contractor, at a price lower than the State contract price, the price to the State shall be immediately reduced to the lower price”.
At page five of the group specifications under the title of general information bidders are advised as follows: "Any price reduction granted will not impact any purchases in progress where orders have already been placed with a contractor. Price reductions will be effective 10 calendar days after the date shown on the purchasing memorandum giving such notice”.
On February 9, 1996, Peckham advised the Office of General Services that since it had submitted a bid to Washington County for concrete at prices lower than those offered to the State in November of 1995, it was offering to extend this same price reduction to the State and all municipalities. On March 14, 1996, the Office of General Services issued a memorandum approving the price reductions submitted by Peckham. This combined CPLR article 78 and breach of contract action ensued. The first cause of action is against the State respondents and argues that the March 14 purchasing memorandum does not comply with section 163 of the State Finance Law and was issued without any statutory authority. The second cause of action is against Warren County asserting that any purchase by the county made on the basis of the prices set forth in the purchasing memorandum would be illegal in violation of sections 103 and 104 of the General Municipal Law. The third cause of action is against Peckham, alleging that Peckham is inducing a breach of Pallette’s contract with the State of New York. The fourth cause of action asserts that Peckham is wrongfully alleging that the purchasing memorandum is a valid reduction in prices. The relief sought is a judgment rescinding the purchasing memorandum and enjoining the Office of General Services and the County of Warren from relying upon it. Mr. Justice Kahn denied petitioner’s application for a preliminary injunction. All of the parties now seek a summary determination of the litigation.
The gravamen of Pallette’s complaint is that permitting a voluntary postbid price reduction by one of the contractors given a multiple-awards contract undermines the entire competitive bidding process. The court disagrees. In Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth. (66 NY2d 144, 148), the Court of Appeals explained New York’s competitive bidding process as follows: "As this court has stated on *872 prior occasion, the purpose of the laws in this State requiring competitive bidding in the letting of public contracts is 'to guard against favoritism, improvidence, extravagance, fraud and corruption.’ (Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187, 193; see also, Matter of Fischbach & Moore v New York City Tr. Auth., 79 AD2d 14, Iv denied 53 NYS2d 604.) These laws were not enacted to help enrich the corporate bidders but, rather, were intended for the benefit of the taxpayers. They should, therefore, be construed and administered 'with sole reference to the public interest’. (10 McQuillin, Municipal Corporations § 29.29, at 302 [3d rev ed]; see also, Matter of Signacon Controls v Mulroy, 32 NY2d 410, 413.) This public interest, we have noted, is sought to be promoted by fostering honest competition in the belief that the best work and supplies might thereby be obtained at the lowest possible prices.”
The State or a municipal agency may obtain price reductions on a public contract through postbid events upon the following conditions: the record contains no suggestion of favoritism, fraud or corruption; the public interest is advanced through the reduction in cost; and, there is no departure from the contract’s original specifications and no concessions made to the contractor reducing its price (Matter of Fischbach & Moore v New York City Tr. Auth., 79 AD2d 14, 22, Iv denied 53 NY2d 604, supra; see, Sinram-Marnis Oil Co. v City of New York, 139 AD2d 360). Here, there is no evidence or suggestion of favoritism or corruption, the public interest is being advanced by the lower prices, and the general specifications specifically advised bidders that any contractor offering the same product to another buyer at a price lower than the State contract price had to offer that price reduction to the State. The Commissioner interprets the new language of section 163 (10) (c) of the State Finance Law as allowing the public to gain the benefit of price reductions occurring after the issuing of a multiple-award contract when the opportunity to match the price reductions is offered to all other successful bidders. That is not only a rational interpretation of the statute, but a desirable one. The courts must defer to a rational interpretation of a statute given by the agency charged with administering it (Matter of Schneider v Bress, 194 AD2d 36, 38). This court has considered petitioner’s remaining arguments and finds that they lack merit.
The combined petition / complaint will be dismissed and the State respondents will be awarded a judgment declaring that *873 the purchasing memorandum dated March 14, 1996 does not violate section 163 of the State Finance Law.