OPINION OF THE COURT
Leslie E. Stein, J.
Petitioner Embee Corp. (hereinafter Embee) and petitioner Taub’s Carpet and Tile Corporation (hereinafter Taub’s) were successful bidders on an invitation for bids (hereinafter IFB) released by respondent in September 2001. Respondent notified petitioners by letter dated February 13, 2002 that they had each been awarded a contract. However, in April 2002, respondent’s counsel contacted petitioners by telephone and advised them that a review of the bid proposals indicated that an award should not have been made because their hourly labor rate was below the prevailing wage rate that applies to public works contracts. By letter dated April 5, 2002, petitioners were notified that the contracts were being terminated effective April 22, 2002. Petitioners assert that they were not given an opportunity to discuss or contest respondent’s decision to terminate their contracts. Petitioners further allege that respondent never asked to review their records. They also allege that they believe that they pay prevailing wage rates consistent with the industry standards for Suffolk County. In addition, petitioners assert that the contract provides for 60 days’ notice prior to termination and that such notice was not given.
Petitioners commenced this CPLR article 78 proceeding seeking the following relief: enjoining and restraining respondent from withdrawing the notice of awards of their respective contracts and from terminating said contracts; enjoining and restraining respondent from notifying the authorized users under the contracts of their purported termination; or, in the event the contracts were already terminated, directing that respondent restore petitioners to their status as approved vendors. Petitioners assert that respondent’s determination to *402 terminate the contracts was arbitrary and capricious and an abuse of discretion and that there is no adequate administrative remedy available without relief from the court. Pending the hearing and determination of the petition, respondents were stayed, enjoined and restrained from taking any action to withdraw and/or terminate petitioners’ status with regard to the contracts and from notifying any authorized users under the contracts the petitioners had been or will be terminated and further providing that petitioners shall not respond to any request for proposals or submit bids for work involving the miscellaneous hourly rate under said contracts.
Respondent answered the petitions, asserting that the court lacks subject matter jurisdiction in that any relief lies within the exclusive jurisdiction of the Court of Claims and that the petitions fail to state a cause of action.
Petitioners assert that a prospective contractor whose bid is rejected can challenge the determination in an article 78 proceeding (citing Burke’s Auto Body, Inc. v Ameruso, 113 AD2d 198; Matter of C.K. Rehner, Inc. [City of New York], 106 AD2d 268; Matter of Konski Engrs. v Levitt, 69 AD2d 940). Petitioners also assert that a contractor with the state may contest a decision to terminate their contracts in an article 78 proceeding (citing Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., 70 AD2d 1021).
Respondent argues that the court lacks subject matter jurisdiction over this proceeding, as this is an action for breach of contract, which should be brought in the Court of Claims (citing Matter of Barrier Motor Fuels v Boardman, 256 AD2d 405; Matter of Granger & Sons v Comptroller of State of N.Y., 220 AD2d 945; Court of Claims Act § 9). Respondent also asserts that the fact that petitioners’ damages may be difficult to ascertain and that the petitions seek specific performance, as opposed to money damages, does not transform the matter into one cognizable under an article 78 proceeding (citing Matter of Barrier Motor Fuels, supra). Respondent further argues that petitioners’ reliance on Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp. (supra) is misplaced, as that case involved an article 78 proceeding in which the petitioner sought to prohibit a state agency from disqualifying a contractor from bidding on future contract proposals by virtue of deficient performance.
Respondent further alleges that the wage rates of $35 per hour which were bid by petitioners for each county in question were facially defective and nonresponsive to the IFB, as they *403 were in violation of the requirement of section III.7 of the IFB.[1] Respondent alleges that the prevailing wage rate plus supplemental benefits is $56.19 ($33.28 wages plus $22.81 supplemental benefits) for all regions in which petitioners bid, except for Sullivan and Ulster Counties, in which Taub’s bid and in which the proper rate is $36.20 ($24.80 wages plus $11.40 supplemental benefits).
Respondent alleges that the relevant prevailing wage and benefit information was made available to each attendee at a prebid meeting. Respondent further alleges that Embee’s representative attended this meeting, but that Taub’s representative did not. Respondent alleges that the failure of the rates quoted by petitioners to comply in the first instance with the IFB and the Department of Labor prevailing wage laws was not discovered prior to the award of the contract due to an error in respondent’s office.
Respondent asserts that, while there is a provision in the IFB allowing the reduction of a bid once the bids have been opened, there is no provision allowing a bidder to increase a bid after the bids have been opened. Respondent further asserts that the IFB requirements, together with the bid and notice of award, are material elements to the contract and that petitioners were unable to supply an essential element of the contract. Respondent argues that, if the purchasing officer had recognized the defect at the time the bids were opened, petitioners’ bids would have been disqualified. Thus, respondent contends that it exercised its right of cancellation for cause pursuant to section 59 of appendix B to the IFB, as petitioners were unable to meet the requirements of the contract relative to the prevailing wages and supplemental benefits.
Respondent argues that petitioners’ position that the state must “live with” its error is untenable. Respondent asserts that public contracts that violate express statutory mandates are unenforceable (citing Granada Bldgs. v City of Kingston, 58 NY2d 705). Respondent further asserts that erroneous approval of an improper contractual provision cannot bind the State or somehow give rise to estoppel (citing Williams Press v State of New York, 45 AD2d 397).
Respondent asserts that the improperly low prevailing wage rate bid by petitioners violates both article 8 of the Labor Law *404 and the express provisions of the contract and that there is no cognizable cause of action against a public entity for underpayment of prevailing wage requirements (citing Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207; Sarbro IX v State of N.Y. Off. of Gen. Servs., 229AD2d 910; Armco Drainage & Metal Prods. v State of New York, 4 AD2d 366). Respondent further asserts that failure to pay the statutory prevailing wage is against public policy, that to continue a contract that was established in error is contrary to law and that the error should be remedied by the cancellation of the contract.
In addition, respondent alleges that the error was brought to its attention by one of petitioners’ competitors. Respondent asserts that, if the court were to allow the bidding error to be “fixed,” it would derogate a fundamental principle of public contracting and would subject respondent to challenges from other contractors who complied with the terms of the IFB in submitting their bids. Respondent asserts that State Finance Law § 163 was purposely developed to create a level playing field for all bidders and that to allow a bidding error to be corrected in violation of the law, undermines the integrity of the competitive bidding process.
Petitioners argue that the cases cited by respondent concerning the court’s jurisdiction over this proceeding are inapplicable because those cases involved actions for money damages, not injunctive relief to prevent termination under a contract. Petitioners assert that they are seeking a traditional article 78 remedy — the prohibition of unlawful government action — and that the same governmental action can both be a contract violation and also support an article 78 proceeding (citing Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1).
Petitioners further argue that allowing amendment of bids prior to, but not after, opening them does not serve the policy of attracting responsible compliant bidders. Petitioners argue that they are not trying to make respondent live with their error; rather, they are simply trying to remedy an inadvertent error and reform the contracts with respect to the miscellaneous hourly rate. Petitioners assert that respondent can engage in postbid negotiations with responsible bidders in the public interest, where the record contains no suggestion of favoritism, fraud or corruption (citing Matter of Fischbach & Moore v New York City Tr. Auth., 79 AD2d 14). Petitioners argue that there is no reason to distinguish this matter from Pallette Stone Corp. v State of N.Y. Off. of Gen. Servs. (168 *405 Misc 2d 869 [Sup Ct, Albany County, Hughes, J.]), in which a postbid price reduction was allowed where there was no evidence of favoritism, corruption or fraud. Petitioners assert that respondent has not set forth any legal basis for its position that the contract cannot be amended to increase the miscellaneous hourly wage rate.
Embee’s president alleges that Embee has had state contracts for approximately six years. Although it previously did both public and private sector work, it is now geared almost exclusively to state contracts. Therefore, Embee alleges that, if it is not allowed to reform its bid, there is a substantial possibility that it will be put out of business. Similarly, Taub’s president alleges that Taub’s has had state contracts for approximately nine years, that a substantial part of its revenues is derived from such contracts and that its business will be harmed if respondent is permitted to terminate the subject contract. Both petitioners assert that all interests would be served by amendment of the bids, as that would allow a responsible provider to remain in business and competitors will compete on a level playing field.
Petitioners argue that respondent’s asserted distinction between this case and Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp. (supra) is without merit, as both cases involve disqualification from participating in state contracts. Petitioners argue that they are not seeking to enforce a contract that violates public policy, but are seeking to amend the contract to conform it to public policy.
Turning first to the issue of subject matter jurisdiction, this court notes that the only questions that may be raised in a proceeding under article 78 of the CPLR are:
“1. whether the body or officer failed to perform a duty enjoined upon it by law; or “2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
“3. whether a determination was made in violation of lawful procedure, was affected by error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
“4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence” (CPLR 7803).
*406 Clearly, subdivisions (1) and (4) are inapplicable to this case. Furthermore, although proceedings under subdivision (2) are generally considered to be in the nature of a writ of prohibition and petitioners have asserted that they seek to prohibit respondent from terminating their contracts, proceedings under subdivision (2) lie “to prevent or control judicial or quasi-judicial action only, as distinguished from legislative, executive or ministerial action” (Matter of Dondi v Jones, 40 NY2d 8, 13 [citation omitted and emphasis added]; see also Matter of Bradford v Helman, 24 AD2d 937; Matter of Lord Elec. Co. v Litke, 122 Misc 2d 112, 117).
Since the action complained of herein does not involve a judicial or quasi-judicial tribunal or officer, this court finds CPLR 7803 (2) to be inapplicable. However, this proceeding may, arguably, fall within CPLR 7803 (3) and, in fact, petitioners argue that respondent’s actions were arbitrary and capricious.
It is well recognized that an “article 78 proceeding is not the proper vehicle for resolving contractual rights” (Matter of Granger & Sons v Comptroller of State of N.Y., 220 AD2d 945, 946 [citations omitted]). However, in Granger, petitioner’s primary claim was for the payment of moneys due for work performed under its contract with the State.
It has also been held that “[t]he mere characterization of the behavior of a governmental agency as ‘arbitrary and capricious,’ or ‘in violation of proper procedure,’ does not suffice to transform the controversy into one appropriate for CPLR article 78 relief, or to trigger the Supreme Court’s jurisdiction over it * * * Rather, the true nature of the claim derives from an assessment of the primary focus of the dispute, as demonstrated by the allegations made and the relief sought” (Matter of Barrier Motor Fuels v Boardman, 256 AD2d 405, 405-406). In the Barrier case, petitioner essentially sought specific performance of a contract and money damages resulting from the State’s failure to honor the parties’ agreement, which the court held to be more properly a claim for breach of contract.
In Abiele Contr. v New York City School Constr. Auth. (91 NY2d 1), the petitioner had been notified that its contract with the respondent had been terminated for cause and that it would be barred from participating in such contracts for three years. The Court of Appeals recognized in that case that
“ ‘there are circumstances in which the same *407 governmental action may constitute a violation of a contract and also be of a character that would support a claim for article 78 relief * * * However, the issues presented in a contract action differ significantly from those presented in an article 78 proceeding. When the damage allegedly sustained arises from a breach of the contract by a public official or governmental body, then the claim must be resolved through the application of traditional rules of contract law. On the other hand, when a petitioner asserts that the determination of a governmental body or public official is ‘in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion’ and seeks nullification of same, then an article 78 proceeding is the appropriate vehicle through which the claim may be addressed” (id. at 7-8 [citations omitted]).
While the cases cited by petitioners involve the disqualification of a bidder on future contracts (see Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., supra) or the rejection of bids prior to formation of a contract (see Burke’s Auto Body v Ameruso, supra; Matter of C.K. Rehner, supra; Konski Engrs. v Levitt, supra), they do not preclude a determination that petitioners herein are entitled to review of respondent’s actions in an article 78 proceeding.
In the instant matter, petitioners are not seeking money damages resulting from an alleged breach of the parties’ contract. Petitioners also apparently concede that the contracts are not enforceable in their present form and, therefore, do not request specific performance of the contracts. Rather, they request nullification of respondent’s decision to terminate the contracts and the right to modify their bids so as to render the resulting contracts compliant with applicable wage laws. Arguably, petitioners’ claims are in the nature of a writ of mandamus to direct respondent to accept revised bids and to continue the existing contracts, subject to the revised bids.
Finally, the court notes that it is highly doubtful that the Court of Claims would have jurisdiction over this matter since it can only grant equitable relief which is incidental to a primary claim for money damages (see Sarbro IX v State of N.Y. Off. of Gen. Servs., 229 AD2d 910, 911; Williams Press v State of New York, 45 AD2d 397, revd on other grounds 37 NY2d 434).
*408 Based upon the foregoing, this court concludes that petitioners’ claims are properly brought pursuant to CPLR article 78. In such a proceeding, “the judicial function is limited to the review of the propriety of the determination in terms of whether the administrative body acted in an arbitrary or capricious manner * * * [the Court] may not usurp the administrative function by directing the agency to proceed in a specific manner * * * ” (Burke’s Auto Body v Ameruso, supra at 200-201).
“Arbitrary and capricious action is one taken ‘without sound basis in reason and * * * without regard to the facts’ ” (Matter of Konski v Levitt, 69 AJD2d 940, 942 [citation omitted]). Stated otherwise, “the judicial function is limited to whether the administrative action may be supported on any rational basis. It is beyond the scope of judicial review to consider the facts de novo nor may the court substitute its judgment for that of the agency” (Matter of C.K. Rehner, supra at 270 [citation omitted]; see also Pallette Stone Corp. v State of N.Y. Off. of Gen. Servs., 168 Misc 2d 869; Matter of Gottfried Baking Co. v Allen, 45 Misc 2d 708) “and rarely will the court by way of an order in the nature of mandamus direct an administrative agency or official to award a contract to a particular bidder” (Matter of Zara Contr. Co. v Cohen, 45 Misc 2d 497, 499, affd 23 AD2d 718 [citations omitted]). “It is only where there has been a clear violation of law or where there has been failure to perform some act required by law that the courts have intervened” (Matter of Albro Contr. Corp. v Department of Pub. Works of State of N.Y., 13 Misc 2d 846, 849 [citation omitted]).
Turning to the merits of the petition, it is well established that “errors made by State employees cannot bind the State” (Williams Press v State of New York, 37 NY2d 434, 441; see also Granada Bldgs. v City of Kingston, 58 NY2d 705) and that “[mjunicipal contracts which violate express statutory provisions are invalid” (Granada Bldgs. v City of Kingston, supra at 708). Thus, “however inequitable the conduct of the State may be, it is responsible on a contract only if all conditions prescribed by law are satisfied” (Matter of Konski v Levitt, 69 AD2d 940, 941 [citation omitted]). In Konski, the Comptroller had never approved the contract in question, as required by the State Finance Law. Therefore, the court held that the State was not liable on the contract unless the Comptroller had acted arbitrarily or capriciously in refusing to approve the contract.
In the instant matter, it is undisputed that petitioners’ bids did not meet the requirements of the Labor Law or of the IFB, *409 that respondent’s employee erroneously approved the bids and that respondent awarded contracts to petitioners based upon that error. Accordingly, the contracts are invalid and the question before this court is whether respondent’s refusal to allow petitioners to increase their bids after the bids were opened in order to comply with the legal and contractual requirements had a rational basis.
With regard to public contracts, the courts have long recognized that
“ ‘[t]he provisions of the statutes and ordinances of this State requiring competitive bidding in the letting of public contracts evince a strong public policy of fostering honest competition in order to obtain the best work or supplies at the lowest possible price. In addition, the obvious purpose of such statutes is to guard against favoritism, improvidence, extravagance, fraud and corruption. They “are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest’ ’ ” (Fischbach & Moore v New York City Tr. Auth., 79 AD2d 14, 19 [citation omitted]).
“ ‘That is not to suggest that a municipal agency may act unfairly or arbitrarily in connection with the letting of public contracts. To the contrary, the law and public policy mandate that bidders be treated equally and fairly in their pursuit of public work. That requirement, however, is not grounded in a concern for the welfare of the bidder, but rather in the firm belief that fairness in the bidding process is inextricably connected with the objective of obtaining the best quality work at the lowest possible price’ * * *
“Logic and experience teach that competition for public contracts may be promoted only by fostering a sense of confidence in potential bidders that their bids will be fairly considered and that they will not be deprived of any substantial benefit afforded to their competitors * * * To that end, courts have held, for example, that a municipality may not ease contract specifications after bids have been submitted or waive material variances in bids received” (Fischbach & Moore v New York City Tr. Auth., *410 supra at 18-20 [citations omitted]).
In conformity with the above principles, it has been held that the State may permit a contractor to reduce its price after the bids are opened. For example, in Fischbach, the Court upheld the right of the respondent to negotiate with the low bidder of a contract for an even lower price. Clearly, this was in the public interest and the Court found that no unfair benefit was afforded to that bidder at the expense of its competitors.
In Pallette Stone Corp. v State of N.Y. Off. of Gen. Servs. (168 Misc 2d 869), the court set forth the conditions upon which the State may obtain price reductions through postbid events, as follows: “the record contains no suggestion of favoritism, fraud or corruption; the public interest is advanced through the reduction in cost; and, there is no departure from the contract’s original specifications and no concessions made to the contractor reducing the price” (id. at 872). In that case, the court found that the respondent’s interpretation of the statute in question was rational and, therefore, concluded that it was required to “defer to a rational interpretation of a statute given by the agency charged with administering it” (id.).
It has also been held that “[b]ids must conform substantially to the advertised specifications and, where there is a substantial variance between the specifications and the bid, it is the right and duty of the public official or body to reject the bid, the test of whether a variance is material being whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders” (Matter of Gottfried Baking Co. v Allen, 45 Misc 2d 708, 710 [citations omitted]).
The issue of whether the variance between the bid and specification is material is a matter for the agency to determine, considering the underlying policy of treating all bidders alike “so as to avoid the possibility of fraud, corruption or favoritism” and the agency’s determination may only be set aside if it cannot be supported on any rational basis (Matter of C.K. Reh-ner, supra at 270 [citation omitted and emphasis added]).
In Rehner, the Court found that the respondent’s rejection of petitioner’s bid due to petitioner’s failure to submit a financial questionnaire pursuant to the bid instructions was neither arbitrary nor capricious since the bid did not conform to the bid specifications. In doing so, it rejected the trial court’s conclusion that the omission of the financial statement was a “curable irregularity” (at 269).
Applying the foregoing principles to the matter at bar, this court finds that petitioners’ bids failed to conform to the *411 specifications and requirements of the IFB and of applicable wage and labor laws[2] and that respondent’s determination that the variance between the bids and the specifications was material had a rational basis. As a result of that variance, respondent would have had the right, and probably the obligation, to reject the bids in the first instance. Furthermore, respondent cannot be bound by the error of its employee in awarding the contracts therein.
The court further finds that the distinction drawn by respondent between allowing a bidder to reduce its bid, but not increase its bid, after the bids have been opened is a rational one given the policies underlying the rules of competitive bidding for public contracts and it is not coincidence that judicial decisions allowing modification of bids generally apply to reductions, only. Under the particular circumstances of this case, petitioners would merely be increasing their bids to comply with minimum wage requirements which all contractors are required to pay. This, in and of itself, would not harm the public. However, in most circumstances, allowing a bidder to increase its bid would result in increased public cost, which directly contravenes the applicable policy. In addition, permitting respondent to allow increased bids under certain circumstances, but not in others, particularly where the bids failed to meet the specifications of the IFB in the first place, would allow for the possibility of fraud, corruption or favoritism, even though there is no evidence of the existence of same in this case, and could undermine the confidence of other bidders that their bids would be fairly considered and that they would not be deprived of benefits afforded to their competitors.
Finally, this court also finds that respondent’s decision to terminate the contracts pursuant to section 59 of appendix B of the IFB, rather than pursuant to section III.2 of the IFB (which would require 60 days’ notice), was not arbitrary or capricious. Section 59 provides that “a contract * * * may be cancelled * * * where [a] Contractor becomes unable or incapable of * * * meeting any requirements or qualifications set forth in the Contract * * * .” Respondent’s determination that petitioners’ failure to bid the prevailing wage rates rendered them unable to meet the requirements of section III.7 of the contract had a rational basis.
*412 In sum, this court concludes that respondent’s actions were neither arbitrary nor capricious, as they were supported on a rational basis. Furthermore, the court may not substitute its judgment for that of respondent and may not usurp the administrative function by directing respondent to proceed in a specific manner.
Accordingly, it is ordered and adjudged, that the petitions are hereby dismissed in their entirety.

. The court notes that section III.7 of the IFB required that the prices quoted for the hourly rate be equal to or greater than the hourly wage rate plus supplemental benefits for the carpenter rate for the county bid.

. Although petitioners allege their belief that their bids are in conformance with prevailing wage rates in Suffolk County, they have submitted no evidence to support that claim.